16-1007 Chuck Meadors v. Cont'l Structural Plastics This is Honorable Paul, my name is Tim Covenor and I represent Chuck Meadors and Chuck Meadors v. Good afternoon, your honors. At the trial level, Judge Leibach found that the CSP had breached the representative agreement with Mr. Meadors and the trial judge also found that CSP had breached the sales representative agreement prior to the June 20, 2006 meeting when CSP decided in violation of that agreement to go to ADA and solicit work from ADA. The court also found that Mr. Meadors' timing brought the action and was not barred by the applicable statute of limitations. The trial judge also found that Mr. Meadors was entitled to prevail and recover on his breach of contract claims in Honorable Paul's sales representative statute if he had not waived those claims. And this is where the decision went. So talk to us about the waiver issue. You want to skip over from the, alright. On the waiver, and we'll talk about the third party beneficiary when we get to the waiver. Right, let's put that to the side and just deal with waiver. You got it. Okay, waiver is a fact-intensive defense. It's an affirmative defense. And silence does not constitute a waiver. So let's divide it into two points. Can we start with what jurisdiction's law governs that? Oh, I think the Ohio law. That's the law that the... And what parties agree on that? You got it. Alright, I will divide, looking at what was Mr. Meadors' view and what was CSP's view. Mr. Meadors' view was he did not waive, he never agreed to waive his commissions. The so-called ultimatum, a meeting repeatedly in the testimony of Mr. Meadors did not take place. With Mr. Flaherty, there was no meeting there. There was a phone conversation with Mr. Olber when Mr. Olber said, you will not receive your commissions. Counsel, it may not be a great questioning, but your opponent quotes a deposition comically in which the line, this is the right question, and you did so knowingly and voluntarily. I mean, you know that you weren't getting the 5% during all these years. You knew that, correct? And yet, he made no effort to obtain those commissions. He continued to work for ADA. And so I gather, and Judge Whitlock cites that language as well, right? And that's the language of labor. You knowingly and voluntarily did something, but something is you just made no attempt. Let's look at that quote. Because the quote, what happened in the deposition is that's two questions. You knowingly and voluntarily. Then he changed the question. You knew you weren't getting the commissions. Yes, and Mr. Meadows throughout the deposition said, and you see it over and over again. They're trying to come in from every different angle on that deposition. Say, look, I knew I wasn't getting my commissions. It's like someone steals the car from my driveway. I come home and I look in the driveway. The car is not there. Yes, I know it's not there, but I do not knowingly waive it. And he cited testimony after testimony after testimony. He keeps repeating, I did not waive it. I did not knowingly waive it. That question was broken. Then the judge of the law would say, but you don't avoid a waiver just by complaining about what's happening to you. That doesn't protect you from. A waiver has to be first created before anything has to be created. You have to create a waiver and argue and show the existence of a waiver. And that's what never has been happening. You're saying Ohio law as a matter of law requires an affirmative giving up of a right that you have. Yes, Your Honor. Why doesn't the language quoted to you take care of that problem? Because it's the question that was answered was, did you know you were not receiving your commissions? The answer to that was yes. You state you're asking the audience, yes, I didn't get a check. I know I did not receive it. And then repeatedly, every deposition piece you see there says, no, I was not waiving it. So now let's see CSPs. Did ADA tell CSP not to pay the commissions? No. CSP's most knowledgeable person on this point, Mr. Murtha, to testify, why did you not pay the commissions? I don't know. There was zero testimony as to why they didn't pay the commissions, they stopped paying the commissions. He said it was a decision communicating from above. He does not know the basis of that decision. It was done above. It was a unilateral decision. There was no discussion by Mr. Meadows. There was no shifting of position, any evidence of shifting. So you're saying under Ohio law that there has to be a party wanting to invoke waiver, there has to be some showing of detrimental reliance by them on the law and assertion of the right? Is that precisely what you're talking about? That's what I'm saying. If it's an affirmative defense that you have to prove that the burden is on the person asserting the waiver to prove the existence of the waiver. Okay, this affirmative defense was actually pledged. This one was, yes, Your Honor. All right, so your point is that this turns on burden of proof? Yes, it turns on burden of proof, and it turns on, yes, I sort of get your question, but I think I'm missing something, so I'll say yes for now. Are you saying that it is a disputed issue of fact? Yes, I'm saying it's a highly disputed issue of fact. We have repeatedly said that the only argument and evidence put forth by the defendants is that Mr. Ritters remained silent. No, it's more than that. Okay. He goes for six years. He continues working for the company, which was unhappy with what they viewed as his double dealing with a supplier. They, from their point of view, your client might have in theory had a contract claim, but he didn't do it. He did not assert it, and he didn't assert it because he understood that his employer didn't want him behaving like that. Okay. Isn't that the case? That would be the, let's assume that was better articulated than what I heard, but let's take that as fact. Thank you. That is a factual issue to go to the trial, and I should have the opportunity to argue that in front of the jury. That's highly factual by its nature. Two, we have a statute of limitations. The purpose of this, what's being tried to turn into this is eliminate the statute of limitations. Had 15 years to bring this action to it. CSP had no conversation with my client on this matter with regards to the reasoning. Why would they? They just stopped paying him. Right. So they did it at their own risk. So you're saying, out of the fact, all right, I'm going to go and I'm going to negotiate with this other group, and we're going to decide to stop paying these commissions, and we're going to stop paying these commissions. Oh, that makes it right? No, no. I don't think that's the point. From their point of view, he had every reason not to pursue any further payments because it would anger his lawyer. And what were those reasons? Again, what is that testimony? Let's put that in front of the jury. Those are all factual issues that need to go to the jury. I'm hearing assumption after assumption and joke in logic, or certainly assumption, and if that's at the end of the testimony, you hear Chuck Letters get on and explain why he did that. Okay, what was the reason for forbearance? Is that in the record? Because when you're dealing in business, first of all, let's put the factual. He went back to Flaherty and said, first he said, you can't do this, I have a contract. And he went back to him and said, look, stop interfering with this, stop interfering with this, and just hit a blind wall. When you're in business, you have to balance the cost of litigation, you're doing business with everyone in the industry, you have to decide when to pick your time to go forward. When we're sitting here as lawyers and judges, this system seems all so simple and straightforward. This is the first place you should go. What you get from John Woodlock's decision is this scenario that ADA, CSP, they meet, they decide that CSP is not going to put you in the 5% commission anymore. ADA is very upset with your client because they did not know about these commissions. In anger, they say to him, you have to make a choice. Either you forego those commissions or you forego the commissions that were putting you. He makes the concluded judgment the relationship with ADA is more important to him than the relationship with CSP. He's not happy. But he, in light of that argument, decides to stick with ADA. And in that sense, he makes a conscious choice. It may seem unfair, but he makes a conscious choice to forego any commissions with CSP and stick with ADA. That's not what happened. There's not one deposition transcript. There's not one piece of evidence that supports that. You have to say our client decided he was given this ultimatum. The judge came to the court and filed it. The date of it, we disagree that that discussion ever took place with clarity. Fundamentally, that never took place. And if there was any discussion, it was connected to the two. It's jump after jump after jump as to that. And it seems to turn on the scenes. Why did he wait so long? He had a right under Ohio law of the statute of limitations. Let's talk about Ohio law. There would be no waiver doctrine whatsoever under Ohio law if it was merely a question of statute of limitations. So you seem to be going in the wrong direction on that. Despite the statute of limitations, Ohio does allow waiver. Yes? Waiver would not stop it. That's what it says in the statute of limitations. You can't use an historical argument to get around the statute. And this is what it sort of sounds like to me. Is this waiver being turned into kind of a historical argument? Okay, that's fair enough. Judge Lopez asked you a question earlier about whether there had to be some showing of detrimental reliance on the part of the CSP here. And I don't think you directly answered that. I apologize. Because I think, to be truthful to the court, I think that is an element that if you can show that that is one way of getting it, it's not the only exclusive way. So I was hesitant to sort of put myself in a more... But isn't what you're saying that the showing of detrimental reliance is a part of the waiver doctrine? And there was a notion that they did not show any detrimental reliance. The notion of detrimental reliance is one... Right. One, you have to show that there was a representation and that there was a detrimental reliance on that, and there was nothing in the piece at all. The only thing was he stayed silent. That was it. Now, would you pause you there? The representation could take effect. He doesn't do anything. He just doesn't do anything for five or six years. Why can't that be viewed as a representation that he no longer... See, honestly, I have a statute of limitations. You're in the same problem I pointed out to you. Do you have anything else you'd like to say? No, I apologize. I didn't mean to be flippant on that. No, I know I just think that this is a matter that is best to go before the jury. It's right for factual issues for the jury. Thank you. Thank you. Good morning, Your Honors. Thomas Walters, appearing on behalf of Continental Structural Plastics. I believe the panel has focused on the key deposition admissions that Judge Woodlock cited and relied upon in his summary judgment decision. We've got a 53-page well-reasoned summary judgment opinion. The summary judgment opinion first stated that there was third party and that that was the premise for them moving on to the waiver and abandonment issue. I noticed that in your brief you focused all except for about eight lines on the third party beneficiary argument and devote about eight lines at the very end to waiver and abandonment. Why is that sufficiently developed for us to consider? Well, in reading the appellant's brief that was filed, the statement of issues in the summary of argument that was presented was the suggestion that Judge Woodlock had issued a sua spate summary judgment. There's an unstated premise here I'd like to get straightened out. Are you saying regardless of the third party theory under Ohio law, independently you could show waiver? Absolutely. Okay, so you do not accept the premise that's articulated at one point in Judge Woodlock's opinion that you first have to go through the third party beneficiary before you can reach the waiver issue? Stated that way, correct. Okay. There does seem to be some inconsistency in the opinion between the final finding, which appears to be independent on the waiver question and to rest on that deposition testimony. And I think for purposes of this panel's review of the case, despite what the appellant suggests in his brief, it is actually a de novo review under Rule 56. And so if the court properly dismissed the claims against, I'm sorry? Why? Because it was a Rule 56 motion that was granted and the standard of review under Rule 56 is a de novo review. And if there are any facts in dispute? I mean, your brief does not go very far into what the Ohio law is of waiver, independently from this third party issue. I don't think that there's any dispute over the applicable Ohio law on waiver. Okay, so it's just articulated to us. If detrimental reliance, is that a requirement? No, Your Honor. Okay. If I may, just taking from appellant's own brief, he cites List and Son Company v. Chase, and in that case the Ohio court says, quote, a waiver is a voluntary relinquishment of a known right. It may be made by express words or by conduct, which renders impossible a performance by the other party or which seems to dispense with complete performance at a time when the obligor might fully perform. Mere silence will not amount to a waiver where one is not bound to speak. There's no expression in the law that there's detrimental reliance required. What about his argument that the statute of limitations basically takes care of this issue when he had a full 15 years? As you pointed out, Your Honor, if one can't raise the issue of waiver until a claim is stale under the statute of limitations, it renders the whole doctrine of waiver completely meaningless and it would have no purpose whatsoever because why would I need it if I could just assert the statute of limitations? So clearly, waiver has to be an independent doctrine that has some purpose under the law and it's not dependent upon the statute of limitations. Did you make an argument before the trial court that waiting six years to institute an action which involves testimony of witnesses about events six, seven years earlier would be very difficult and that was part of the component of why you say he waived this claim? I don't believe that we made that particular argument. Okay. But I do want to address the question of the detrimental reliance and really from the standpoint of what's just here. And although Ohio law does not require for a waiver to be effective, that there also be detrimental reliance, in this case there was a choice made by Mr. Meaders that he would continue to do business with ADA. He was their agent. They were the purchaser. And that he would forego his right to claim 5% from ADA's supplier. He made that choice. And then for six years, 59 months by my count, Well, he says he didn't. Well, I'm happy to point out the record evidence that clearly establishes he did, as did Judge Woodlot throughout his opinion. And there's no dispute of fact that he made that decision. Well, it's clear from the record that he did not get it. It's not clear to me from the record that he made that specific decision to relinquish his claim. Well, he was given a choice by ADA. Because remember, as this plays out chronologically, first and foremost, Chuck Meaders is an agent of ADA. And he's charged with him being compensated to go find a molder in Ohio to create these warning panels for ADA. But initially he was an agent of both. Initially he was an agent of ADA. And then he comes to Venture, which becomes CSB, and he extracts this letter, pursuant to which he says, I can get you purchases from ADA, but you've got to give me 5%. And quite frankly, it's a classic kickback from a supplier. He's at first ADA's agent. He has fiduciary duties. He can't have a dual agency relationship without both principles approving it and being knowledgeable of it. You can't fail to disclose to one or the other principles where you have a dual agency relationship that you're in a dual agency relationship because you have fiduciary duties. This was all cited and detailed in our briefing on summary judgment, which is part of the record appendix, before Judge Woodlock. So first of all, he has and enters into an agreement with ADA whereby he's going to, quote, act as ADA's agent in negotiations with compression molders and SMC suppliers. This is in August of 2005. Record Appendix 1362 through 1365 contains this evidence. Then in September, after agreeing to serve as ADA's agent, he approaches what was then Venture, which became Continental Structural Plastics, and he says, I need to purchase molded tiles and I need to find a supplier on behalf of my principal, ADA. And I can get you ADA's business, but you're going to give me 5%. A letter gets written, and that agreement gets performed for a period of months. Then ADA, which has every way to do so, says he indicates that, and once again, these are just facts that are, in my humble opinion, are in dispute. He indicates that that was part of his complete structural salary package. And this is important. I'm glad you raised that because that may or may not have been true prior to June of 2006 because you remember Mr. Meadors claims that John Flurry of ADA said, hey, it's okay for you to take a kickback from our suppliers. But there's absolutely no dispute of fact whatsoever that after June of 2006, Mr. Flurry and ADA instructed Mr. Meadors, you shall not take any more payments from any of our suppliers. Okay, Counselor. And I can settle on this. In general, we're not found that CS breached its contractual agreement with Mr. Meador, right? The court made that finding. It did. He said there was a breach under Ohio law. They breached the agreement. And that's why it then goes into this third-party beneficiary issue, which we're not going to talk about, and the waiver issue. And he says that Mr. Meadors is entitled to collect unless his effort to collect is barred by waiver. Let me ask you, the issue of the waiver has to be voluntary in knowing. Is voluntary in knowing, isn't that a factual issue? I mean, he says there was nothing voluntary about this. I didn't find out about the arrangement between CSP and Meador until after the fact. I heard about it. I was very upset about it. I had to make a hard decision to preserve my relationship with ADA. But I let everybody know I was not happy about this. I complained about it. And under all those circumstances, this was not a voluntary decision. I was compelled, I guess this is an argument by circumstances, to defer any demand for payment from CSP. Why shouldn't the jury decide under all those circumstances whether he voluntarily waived his claim against CSP? Well, first of all, I'd submit that he actually expressly admitted as much during his deposition. And the two questions that were actually asked is the question, Well, from July 2006 forward, you continued to perform a contract with ADA that did not include the 5% that was part of the earlier arrangement, correct? Correct. I then asked, and you did so knowingly and voluntarily. I mean, you knew you weren't getting the 5% during all those years, the end of 2006, 2007, 2008, 2009, 2010, 2011. And that's five more pages of deposition where he makes, yeah, he says, Sure, I knew I wasn't getting it, but I wasn't happy about it. I complained about it. I didn't do anything to give up my legal entitlement to that. But he absolutely did do something to give up his legal entitlement. He agreed to continue to do the work with ADA. And this is an important aspect of this, because this case really boils down to this choice that he made. Had he decided not to forego the right to take the 5% kickback from the supplier and he said, I'm going to pursue that and know ADA, I want to continue to pursue my 5% from the supplier, he would then lose his relationship with ADA. Because as Judge Whitlock pointed out, Mr. Meadows was presented with a choice, and this is undisputed. Mr. Meadows' testimony, Mr. Flaherty's testimony, Mr. Murtha's testimony, Mr. Ober's testimony, it's all part of the record. No one disputes the fact that he was given this choice. At page 7 of our appeal brief, we've excerpted, again, Mr. Meadows' own testimony about that. So he voluntarily decides to make, was it a great choice? Was it a choice where, geez, I can't choose between these two glorious options. They're both super awesome. Perhaps not. But frequently in the context of business and the commercial enterprises and private contracts, business people are faced with difficult choices, as was Mr. Meadows. And so he could choose to pursue the 5%. He could choose to continue with ADA. But he could not do both. So is there an Ohio case? You see, what I fear is I don't want a ruling that under Ohio law, putting somebody to hard business choices is impermissible. Because it strikes me that the choice he was put to here was perfectly sensible from the point of view of his employer. So what does the word voluntary actually mean under Ohio law when you give someone, did the district court refer to this as a Hobson's choice? You put pressure on them. They can make the decision. You say he admitted it was voluntary. Judge Lopez came back to you with how can it be voluntary if there's pressure on you brought about by circumstance. Is there anything in Ohio law about sort of what's a jury issue and what should be decided by the court? Well, I guess in response to that question, there are doctrines like the doctrine of unconscionability. So is the choice had been unconscionable? Yeah, but this isn't an unconscionable choice. This is a principal who's hired an agent saying, I'm not going to allow you to represent me any longer if you're going to take kickbacks from suppliers. That's not a coercive, unduly oppressive decision that Mr. Matters was faced with. In fact, he was faced with the decision of having to actually abide by what the law requires of him under his fiduciary duties, his duties of loyalty, and his duties to ADA, which again arose first in time in August of 2005 before he ever approached CSB and extracted a kickback from them. Now, he was subsequently discovered to have done it again after June of 2006, and he was terminated. And it was at that time for the very first time, six and a half years later, he sues ADA, he sues CSB, and we find ourselves here. But as a factual matter, there are no factual disputes that would preclude summary judgment here. And I do want to finish, if I may, with the point, although I don't think it's appropriate, but just for sake of argument, any kind of a remand here would not involve entry of judgment. We would just simply have a situation where there was a finding, and I would disagree with it obviously, that there's a question of fact about the affirmative defenses of waiver, abandonment, novation, relinquishment, etc. Here, however, the facts are not in dispute with regard to the choice that he made, the fact that it was presented to him, and it's well documented in the papers. Thank you. Thank you. Thank you both.